UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MATTHEW LEE STASZAK,

    Petitioner,

      v.                        Civil No. 15-cv-20-JPG

UNITED STATES OF AMERICA,          Criminal No 12-cr-40064-JPG

    Respondent.

## MEMORANDUM AND ORDER

      This matter comes before the Court on petitioner Matthew Lee Staszak's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) and supplements to the motion (Docs. 6 & 31).   The Government has responded to the motion (Docs. 20, 47 & 60), and Staszak has replied to those responses (Docs. 26, 51, 56 & 61).   The Court held a hearing on the motion on March 22-23 and April 16, 19, and 25, 2018, Staszak and the Government filed post-hearing briefs (Docs. 116 & 129).

## I.      Background

      On June 20, 2012, a grand jury returned an indictment against Staszak.   He pled not guilty to the charges.   After being released on bond, the grand jury returned a superseding indictment changing one statutory citation and adding one additional charge.   On October 4, 2012, Staszak failed to appear for arraignment on the superseding indictment, and the Government discovered he had removed his location monitoring device—an ankle bracelet—and had absconded.   This led the grand jury to return the Second Superseding Indictment while Staszak was a fugitive adding a charge of failure to appear based on Staszak's failure to appear at the arraignment on the superseding indictment.   Staszak was eventually apprehended, his bond was revoked, and on June 3, 2013, he was arraigned on the Second Superseding Indictment.

On August 5, 2013, Staszak pled guilty pursuant to a plea agreement and stipulation of facts to one count of sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a) and (e) (Count 1), two counts of travel with intent to engage in illicit sexual conduct in violation of 18 U.S.C. § 2423(b) (Counts 2 and 3), and one count of failure to appear at a required court hearing in violation of 18 U.S.C. § 3146(a)(1) (Count 4).

On February 7, 2014, the Court held a sentencing hearing at which it found Staszak's offense level was 43 (adjusted down from 45 pursuant to United States Sentencing Guideline Manual ("U.S.S.G.") Ch. 5, Part A cmt. n. 2 (2012)), and his criminal history category was I, which yielded a guideline sentencing range of life. The Court reduced that range to the 30-year statutory maximum sentences for Counts 1, 2 and 3 pursuant to U.S.S.G. § 5G1.1(a), *see* 18 U.S.C. § 2251(e); 18 U.S.C. § 2423(b), yielding an effective guideline sentencing range for those counts of 360 months. The Court sentenced the petitioner to serve 180 months on Counts 1, 2 and 3, concurrently, and 60 months on Count 4, consecutive to the sentence for Counts 1, 2 and 3, for a total of 240 months in prison. This was 60 months less than the 300-month sentence agreed to by Staszak and the Government. The petitioner did not appeal his conviction. On January 8, 2015, Staszak filed the pending § 2255 motion.

## II.    § 2255 Motion

In his timely § 2255 motion and supplements, Staszak argues the following:

Ground 1:     His counsel was constitutionally ineffective in violation of his Sixth Amendment right to counsel when she informed him in June and July 2013 that if he did not plead guilty, the Government would prosecute his family for aiding and abetting him while he was a fugitive; he was deprived of his Fifth Amendment due process right when he involuntarily pled guilty to avoid that threat of his family's prosecution;

Ground 2:     He was deprived of his Fifth Amendment due process rights when the

Government induced him to plead guilty by threatening to prosecute his family when it did not have probable cause to believe his family had aided or abetted him while he was a fugitive;

Ground 3: His counsel was constitutionally ineffective in violation of his Sixth Amendment right to counsel when she failed to investigate Count 1, which would have revealed the Government did not actually possess certain evidence of the charged offense—a video of sexually explicit conduct with a minor and evidence linking his cell phone to any sexually explicit conduct—and recommended he plead guilty to Count 1 without conducting a proper investigation; he was deprived of his Fifth Amendment due process right when he unknowingly, unintelligently and involuntarily pled guilty;

Ground 4: His Fifth Amendment due process rights were violated when the Government committed prosecutorial misconduct by charging him with sexual exploitation of a minor in Count 1 without evidence of a video of sexually explicit conduct with a minor and evidence linking his cell phone to any sexually explicit conduct, which showed it lacked a nexus to interstate commerce and thus subject matter jurisdiction; his counsel was constitutionally ineffective in violation of his Sixth Amendment right to counsel when she failed to argue the Government lacked jurisdiction; he was deprived of his Fifth Amendment due process right when he unknowingly, unintelligently and involuntarily pled guilty;

Ground 5: His counsel was constitutionally ineffective in violation of his Sixth Amendment right to counsel when she advised him to execute a plea agreement and stipulation of facts and to plead guilty to Count 1 after he had informed him that the allegations in Count 1 had never occurred;

Ground 6: His counsel was constitutionally ineffective in violation of his Sixth Amendment right to counsel when she advised him to execute a plea agreement and stipulation of facts and to plead guilty to Count 2 after he had informed him that the allegations in Count 2 had never occurred;

Ground 7: His counsel was constitutionally ineffective in violation of his Sixth Amendment right to counsel when she failed to do legal research to discover that the conduct charged in Count 3 does not amount to a federal offense; his Fifth Amendment due process rights were violated when the Government committed prosecutorial misconduct by charging him with Count 3 when it knew his conduct did not amount to a federal offense; he was deprived of his Fifth Amendment due process right when he unknowingly, unintelligently and involuntarily pled guilty;

Ground 8:        His counsel was constitutionally ineffective in violation of his Sixth Amendment right to counsel when she failed to pursue the Government's offer for Staszak to cooperate in the prosecution of his minor victim's mother; his Fifth Amendment due process rights were violated when the Government committed prosecutorial misconduct by falsely representing to Staszak that he would receive a sentence reduction if he cooperated and to the Court at sentencing that there was an ongoing investigation of the victim's mother; he was deprived of his Fifth Amendment due process right when he unknowingly, unintelligently and involuntarily pled guilty;

Ground 9:        His counsel was constitutionally ineffective in violation of his Sixth Amendment right to counsel when she and others in her office induced Staszak to plead guilty using threats of prosecution of his family or of him by other jurisdictions, false promises of a sentence reduction for cooperation and assistance of counsel through his cooperation;

Ground 10:       He was denied his Fifth Amendment due process rights when the Government failed to produce exculpatory evidence, a forensic examination of his cell phone showing no images of sexual activity; he was deprived of his Fifth Amendment due process right when he unknowingly, unintelligently and involuntarily pled guilty;

Ground 11:       His counsel was constitutionally ineffective in violation of his Sixth Amendment right to counsel when she failed to file a motion to withdraw his guilty plea after he and/or his parents instructed her to do so on two occasions;

Ground 12:       He was denied his Fifth Amendment due process rights when the Government failed to comply with grand jury procedures contained in Federal Rule of Criminal Procedure 6; his counsel was constitutionally ineffective in violation of his Sixth Amendment right to counsel when she failed to contest the Court's jurisdiction light of the violation of Rule 6;

Ground 13:       His counsel was constitutionally ineffective in violation of his Sixth Amendment right to counsel when she failed to investigate Count 2, which would have revealed that a dominant purpose of his interstate travel was not to have illicit sexual conduct with the victim, and when she failed to challenge the Court's jurisdiction on this basis; and

Ground 14:       His counsel was constitutionally ineffective in violation of his Sixth Amendment right to counsel when she failed to investigate two individuals he claims were involved in criminal conduct with his victim

> and falsely promised him he would receive sentence reduction of at least 50% for assisting with prosecution of the other individuals; the Government committed misconduct by representing to the Court he was to receive a sentence reduction and by withholding evidence regarding these other individuals' criminal conduct from his counsel.

Staszak states several times that had the Government not threatened to prosecute his family and had his counsel been constitutionally effective, he would not have pled guilty and would have proceeded to trial.

In an order dated April 7, 2015 (Doc. 3), the Court determined that it was plain from the motion and the record of the prior proceedings that the petitioner was not entitled to relief on Ground 12. *See* Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts. The Court ordered the Government to respond to Grounds 1-11, 13, and 14, which it has done (Docs. 20, 47 & 60), and Staszak has replied to those responses (Docs. 26, 51, 56 & 61).

As a preliminary matter, the Government asks the Court to ignore some of the affidavits and other evidence submitted by Staszak in support of his motion on the grounds that the affidavits are not made on personal knowledge and/or that the evidence is irrelevant. In its consideration of the motion, the Court will not wholesale strike Staszak's evidence, but it will disregard affidavits not based on personal knowledge and otherwise irrelevant evidence.

The Government argues that Staszak waived his right to file this § 2255 motion in his guilty plea, that he has not made the threshold showing that he has actual, non-speculative proof of constitutional violations, that he has waived some issues by failing to file a notice of appeal, and that he is not entitled to relief based on the merits.

## III.    § 2255 Standard

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation

of the Constitution or laws of the United States." 28 U.S.C. § 2255. However, "[r]elief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013)). In addition, a defendant may waive his right to file a § 2255 motion as part of his plea agreement. *Jones v. United States*, 167 F.3d 1142, 1144-45 (7th Cir. 1999). The Court will uphold and enforce such a waiver unless the plea agreement was involuntary, the sentence exceeded the statutory maximum sentence, or the defendant received ineffective assistance of counsel in connection with negotiating the plea agreement. *Id.*; *see Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011).

## IV.    Facts

Before turning to the parties' respective arguments, the Court notes the relevant facts, which come primarily from two sources: the criminal case record and the § 2255 hearing held in this case. Those sources reveal the following relevant facts.

### A.    Facts in the Record of the Criminal Case

In the plea agreement, Staszak acknowledged that he had read it, discussed it with his counsel and understood it, and that he had discussed the Government's case and his possible defenses with his counsel. He further stated that he was fully satisfied with his counsel's representation. He further acknowledged that he was guilty of the charged offenses because he had actually committed conduct that violated each element of the offense. In exchange for the Government's concessions in the plea agreement, he also stated that he waived his right to appeal his conviction and sentence unless it exceeded the parties' recommended 25-year sentence. This agreed sentence was well below the 360-

month sentence called for by the U.S.S.G., the range eventually adopted by the Court at sentencing.

At the plea hearing, Staszak testified under oath after the Court warned him that any false or untrue statement could later be used against him in a prosecution for perjury or making a false statement. Plea Tr. 3. Staszak told the Court he was fully satisfied with his counsel's representation and advice, Plea Tr. 3, and that he understood the charges against him and their possible penalties, Plea Tr. 3-8. He further told the Court twice that no threats or promises had been made to him to induce him to plead guilty and twice that he was pleading guilty as his own free and voluntary act. Plea Tr. 9, 17-18. He further confirmed that the negotiated promises to him in the plea agreement were the reason he intended to plead guilty. Plea Tr. 10. In addition, Staszak acknowledged that he had discussed the waiver of his right to appeal and file a collateral attack and that he had no questions about those waivers. Plea Tr. 12. The Government set forth the factual basis for the guilty plea, including:

- for Count 1, that in June or July 2011, Staszak used a 16-year old minor "to take part in sexually explicit conduct, that is, sexual intercourse, including genital to genital intercourse, for the purpose of producing a visual depiction of such conduct with his Verizon cellular telephone, model Droid X2" and "did produce such a visual depiction that he and [the minor] watched after it was produced." Plea Tr. 15-16;

- for Count 2, that on March 22, 2011, Staszak "traveled interstate from North Carolina to Williamson County, Illinois, . . . for the purpose of engaging in illicit sexual conduct, that is, sexual intercourse, including genital to genital intercourse with [the minor], who was then 15, and the two did engage in such conduct." Plea Tr. 15; and

- for Count 3, that on May 29, 2011, Staszak "traveled interstate from North Carolina to Williamson County, Illinois, . . . for the purpose of engaging in illicit sexual conduct, that is, sexual intercourse involving genital to genital intercourse, with [the minor], and the two did engage in such conduct." Plea Tr. 15.[1]

---

[1] The Government also set forth the factual basis for Count 4, a charge of failure to appear for arraignment on the superseding indictment while he was released on bond, but since Staszak does not deny in his § 2255 motion that he committed that conduct, the Court does not include it here.

Staszak agreed that the Government's statement of these facts was correct as to each count. Plea Tr. 17. Staszak then entered a guilty plea to all counts. Plea Tr. 17. The Court concluded that there was a factual basis for Staszak's plea, that he had knowingly, voluntarily and competently pled guilty to all charges, and that he was guilty of those charges. Plea Tr. 18. The Court eventually sentenced Staszak to 20 years in prison, less than he and the Government had asked for.

As the Court noted in its preliminary review of this case, Staszak's plea agreement contained a broad waiver of his right to challenge his conviction and sentence through a § 2255 motion: "[T]he Defendant knowingly and voluntarily waives his right to contest any aspect of his conviction and sentence that could be contested under Title 18 or Title 28, or under any other provision of federal law, except that if the sentence imposed is in excess of the agreement of the parties herein, the Defendant reserves the right to appeal the reasonableness of the sentence." Plea Agrmt. 10. Such waivers may be unenforceable if the plea agreement was involuntary or the defendant received ineffective assistance of counsel in connection with negotiating the plea agreement. *Jones v. United States*, 167 F.3d 1142, 1144-45 (7th Cir. 1999); *see Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011). Staszak alleges that his guilty plea was involuntary and that he received ineffective assistance of counsel in connection with the negotiation of the plea agreement.

B.     Facts From the § 2255 Hearing

At the § 2255 hearing, counsel and the Court thoroughly explored the events leading to and immediately following Staszak's guilty plea, many of which are not reflected in the record of his criminal case. At the hearing, Assistant United States Attorneys Kit Morrissey and Angela Scott represented the Government, and attorney Terry Green represented Staszak. Staszak called as witnesses Daniel Staszak (his father), Norena Staszak (his mother), himself, and Mark Krug (a police

officer who assisted the FBI in investigating Staszak's case). For its case, the Government called as witnesses Phillip Kavanaugh (the Federal Public Defender ("FPD") at the time of Staszak's prosecution) and Melissa Day (the Senior Assistant FPD representing Staszak after he was apprehended after absconding).

The Court finds Staszak's testimony to be highly incredible. The Court has considered his demeanor while testifying, the reasonableness of his testimony in light of other credible evidence in this case (including his credible testimony at the plea colloquy), the inconsistency of the testimony with other representations made by Staszak in this proceeding, and his strong incentive to present an unlikely version of events that he believes will lead to his release from prison. The Court gives his testimony very little weight.

On the other hand, Kavanaugh's and Day's testimony was highly credible. The Court has considered their demeanor while testifying, the reasonableness and consistency of their testimony with the other evidence in the case (including each other's testimony) and within the testimony itself, and the lack of any legitimate reason not to tell the truth. The Court gives their testimony great weight.

The Court finds the testimony of Daniel Staszak and Norena Staszak was only partially credible but notes that much of their testimony was irrelevant and/or was hearsay. The Court considered their demeanor while testifying, and notes that they had incomplete knowledge of the evidence in the case which likely caused them to have a slanted view of their son's situation and his thought processes leading to his guilty plea, and that they had an incentive to support their son's case seeking to be released from prison. The Court further notes that their participation in Staszak's absconding from justice was an open question and that at the time of their testimony they had an incentive to color their testimony in their own interests.

The Court finds the testimony of Mark Krug was credible based on his demeanor while testifying and lack of any interest in the outcome of this case.

Based on the credible, relevant testimony, the Court finds the following facts.

Day was assigned to represent Staszak in early June 2013 after he failed to appear in court, was a fugitive for seven months, and was apprehended.   At that time, she briefly reviewed the file from Staszak's previous counsel and the Court file.   She met with Staszak at the Jackson County Jail several days later for about three and a half hours to review the file with him in depth.   She went over with him all of the discovery materials she had, other materials from prior counsel's files, Staszak's questions about trial, and pending motions that had been filed by prior counsel.   The materials she reviewed with him in that and/or later visits included an FBI 302 report of Staszak's interview in which he admitted that he had committed the conduct in Count 1 (the main driver of his high offense level under the guidelines), the transcript of a recorded telephone conversation between Staszak and the victim, and documentation of the Government's invitation for Staszak's to provide information about others involved in criminal activity.   She also reviewed with him a letter from the Government before Staszak became a fugitive that conveyed a plea offer, stating what the Government's sentencing recommendation would be if Staszak went to trial and was convicted—stacking the statutory maximum sentences for all counts to effectively achieve the life sentence the guidelines called for had there been no statutory maximums—and noting another judicial district was willing to pursue charges against Staszak.   Day also noted the additional charge in Count 4 of failure to appear in court could potentially lead to a 100-year sentence if stacked with the other charges (30 years on Counts 1, 2 and 3, respectively, plus 10 years on Count 4).   After reviewing the evidence in the June 2013 visit, Staszak told Day he wanted to go to trial but that he would entertain offers from the Government, a position he

maintained for the first four times Staszak met with Day.   Day communicated Staszak's position to the Government and continued to prepare for trial.

In Day's later visits with Staszak, she continued to discuss the strengths and weaknesses of the Government's case, Staszak's potential defenses, and possible sentences—including the potential 100-year sentence the Government could recommend in the absence of a guilty plea—and other collateral consequences.   She continued to investigate the case and prepare for trial while conducting normal and appropriate discussions with the Government and accurately advising Staszak about the Government's positions.

The Government eventually set the end of July 2013 as a deadline by which Staszak would have to plead guilty in order for the Government to avoid preparing for a September trial and to avoid additional charges the Government was planning to present to the grand jury in early August.   While not specified, those charges appeared to Day likely to involve witness tampering, and she so advised Staszak.   As the deadline approached, Staszak informed Day that he thought a trial could go either way for him and that he wanted the Government to completely drop the charges.   At that point, the Government's had thrown out the possibility of a recommendation of a total sentence of 30 years if Staszak pled guilty, which Day had conveyed to Staszak, but Staszak had rejected.

Kavanaugh, who had briefly discussed the case with Day, volunteered his assistance to help Staszak understand the gravity of the charges he was facing and the likely consequences.   Kavanaugh reviewed Day's notes and important pieces of evidence against Staszak, including the FBI 302 report of Staszak's incriminating interview, the transcript of an overhear of a phone conversation Staszak had with the victim, and other communications Staszak had with the victim.   Kavanaugh formed the reasonable opinion that if Staszak went to trial, he would be convicted.

On July 19, 2013, Kavanaugh met with Staszak in the Jackson County Jail for about ninety minutes. The meeting was congenial without any yelling, cursing, or rudeness. Kavanaugh accurately advised him about his options—plead guilty or go to trial—and the potential consequences of each option, including Kavanaugh's opinion that, in light of the strength of the evidence, Staszak was likely to be convicted if he went to trial and serve a longer sentence than if he pled guilty. He further explained that the arguments Staszak suggested in his defense were not valid defenses to the charges. He further advised Staszak that he could be prosecuted in other jurisdictions because of the locations of the charged conduct. Kavanaugh never told Staszak that if he pled guilty in this district he would not be prosecuted in others or that if he did not plead guilty he would be prosecuted in other jurisdictions; he simply informed him he could be prosecuted elsewhere.

Staszak suggested to Kavanaugh that he had damning information about the victim's mother, who was alleged to have facilitated the contact between Staszak and the victim, so Kavanaugh advised him about the proffer process. Kavanaugh never told or promised Staszak he would receive a sentence reduction if he assisted in the investigation of the victim's mother. Staszak never indicated to Kavanaugh that he wanted to make a proffer.

Staszak told Kavanaugh he was putting his family through hell, but Kavanaugh never used that notion to encourage Staszak to plead guilty. Kavanaugh told Staszak that the Government was looking at his parents for helping him evade capture when he had absconded and that Staszak did not want to "mess with" the Government because no one could predict whether it would actually prosecute his parents. He advised Staszak to "get on the right side of the Government" so maybe they would not prosecute his parents. Kavanaugh reinforced to Staszak that he needed to worry about himself, not his family. Kavanaugh never told Staszak that the Government had threatened to prosecute his parents if

he did not plead guilty or had promised not to do so if he pled guilty. In sum, Kavanaugh did not pressure Staszak to plead guilty other than to tell him his assessment of the real and dire possible consequences to his own freedom if he did not. He did not make many of the statements Staszak alleges he did during their meeting.

At the time of the meeting, Kavanaugh was under the mistaken impression that the Government had offered to recommend a sentence of 20 years in prison if Staszak pled guilty, and so advised Staszak. Day had informed him before he met with Staszak that the offer was actually for 30 years. At the end of the meeting, Staszak told Kavanaugh he wanted to plead guilty in exchange for a recommendation for a 20-year sentence. When Kavanaugh learned he had misinformed Staszak about the Government's offer, Kavanaugh was able to convince the Government to change their offer from 30 to 25 years.

Day met again with Staszak on July 26, 2013. Staszak also indicated he did not want to put his parents through a trial. He told Day he would plead guilty in exchange for a recommendation of a 25-year sentence, but asked Day to push for 23 years instead. Day conveyed Staszak's request to the Government, which rejected it, sticking to 25 years. Day continued to conduct normal, typical, reasonable, and fair negotiations with the Government about the specific terms of a plea agreement. At this point, Day shifted her advice to Staszak from trial preparation to advice about guilty pleas and the consequences of a guilty plea, including the sentencing process, potential sentences and other collateral matters. Staszak was no longer insisting on a jury trial, and his decision to plead was communicated orally to the Government by the July 31, 2013, deadline and in writing the following day. The agreement included the provision that both sides would request a 25-year sentence. Because his value as a witness was diminished by his fleeing on bond, the Government, was no longer

interested in cooperation Staszak might be able to give in prosecuting the victim's mother in exchange for consideration for a sentence reduction.

Day did not have any specific information about the Government's interest in prosecuting Staszak's parents and only generally knew that there was some thought that they might have aided and abetted him in fleeing. She was not given access to any evidence of such assistance because it was not germane to Staszak's charges and she was not representing Staszak's mother. In none of Day's contacts with the Government did the Government say it would arrest and prosecute Staszak's family or anyone else if he did not plead guilty, and Day related no such representation to Staszak. Similarly, Day was not provided any evidence that Staszak tampered with witnesses while he was a fugitive because he had not been charged with such a crime. She had general notions that the Government was investigating such crimes and had represented to her that it had evidence to support a charge. Day shared with Staszak everything she knew with regard to prosecution of Staszak's parents or with witness tampering charges against Staszak.

As the date for the change of plea hearing approached, Day continued to educate and advise Staszak on the plea, the plea documents, and the plea process, including the waivers included in the plea agreement and that the Government would stop investigating potential charges against him for witness tampering and would stop investigating his parents. On August 2, 2013, she specifically included in this advice what a § 2255 motion was and that he was waiving his right to file one to challenge his sentence unless he received ineffective assistance of counsel in the plea process. She further advised him that he would be under oath at the plea colloquy and that if he had a question about anything happening at that time, he should ask a question rather than lie under oath. She advised him that the judge would ask him whether any threats or promises had been made to him to induce him to

plead guilty, and that if there had been any, he should tell the judge at that time. During that meeting, Staszak seemed more concerned about whether his parents would get to keep his Jeep the Government was seeking to forfeit than he was about his parents being prosecuted, which he believed was not likely to happen. The impact Staszak's guilty plea could have on any investigation into his parents' potential criminal conduct was simply not the—or even a—basis for the plea bargain. Instead, the strong evidence against him, the length of time he stood to serve in prison, his exposure to other charges in this and other districts, and the plea agreement were the deciding factors in his decision to plead guilty.

On the morning of the plea hearing, Day reviewed a revised plea agreement with Staszak at the courthouse. One of the things she clarified to Staszak was that, after the guilty plea, the Government had said it would stop investigating his parents, and possibly extended family, for aiding and abetting his fugitive status. She did not seek this information from the Government because Staszak requested it or in any way indicated it was important to his decision to plead guilty but simply in an effort thoroughly understand and convey to Staszak what would happen if the guilty plea went through.

On the day of the plea hearing on the way into the courtroom, Day told Staszak's parents that everything was on track for Staszak to enter a guilty plea and that it was her understanding the Government would not pursue charges against them if he changed his plea to guilty.

At no time did Day tell Staszak or suggest to him that if the Government had made threats to him or his family, he should not inform the judge. Staszak never told Day he would have to lie to the judge to get through the plea hearing, and she never responded that that was the way it had to be or his parents would be arrested and prosecuted. She never told him or suggested to him he should lie to the Court. She did not represent to him that he would be charged in other jurisdictions or his parents

15

would be arrested and prosecuted if he did not plead guilty.

Staszak changed his plea to guilty on August 5, 2013, which is reflected in the criminal record as noted above. As set forth above, at no time during the plea colloquy did Staszak say or do anything to indicate his guilty plea was not knowing and voluntary or that he was under duress in changing his plea. Had he done so, the Court would not have accepted the plea, as it has done with countless defendants who express doubts or display uncertainty about changing their plea to guilty.

After changing his plea to guilty, Staszak never communicated to Day that he had made a mistake and wanted to withdraw his guilty plea. Nor did his parents ever tell Day Staszak wanted to withdraw his guilty plea. Day met with Staszak on August 20, 2013, with a probation officer to conduct his interview for the presentence investigation report ("PSR"). She continued to communicate with him about the sentencing hearing and how to present his case in the best light for the lowest sentence.

She met with him again on November 1, 2013, to review the PSR. They discussed several immaterial inaccuracies about the details of the offense conduct as set forth in the PSR, but Day advised Staszak that the details would not make a difference, so Staszak should not raise them. She made a strategic judgment call to recommend trying to get the lowest sentence possible by highlighting Staszak's personal and military history instead of pointing fingers at the victim over immaterial issues, which she believed might not be viewed favorably by the Court and might risk a higher sentence. Staszak did not say anything to her at any time to this point about wanting to withdraw his guilty plea, about having pled guilty because he felt threatened in the process, or about the process being unfair. He did, however, ask Day if he could review the rest of the discovery he had not seen earlier—CDs containing evidence that he had not viewed because there had been no CD player when he and Day had

met.

Day or another member of the FPD's Office staff met with Staszak again five times to review the evidence with him. The FPD staff member who conducted the fifth of those visits, Jared Martin, reported to Day that Staszak wanted to consider withdrawing his guilty plea. In response, Day arranged another meeting with Staszak in early December and reviewed the plea colloquy before that meeting. She wrote Staszak a letter and advised him in person at the meeting that there were few bases for allowing withdrawal of a guilty plea, that Staszak's answers in the plea colloquy evidenced his voluntary decision to plead guilty, and that she did not think grounds for withdrawal other than the colloquy applied. After that, Staszak did not mention withdrawing his plea again.

On January 10, 2014, Day filed a sentencing memorandum with a letter from Staszak attached that the Government considered to contain untrue statements, including some about the victim. The filing caused the Government to feel it needed to call witnesses at the sentencing hearing to counter parts of Staszak's letter. Day met with Staszak to discuss the problems the Government had with his letter and went over with Staszak the evidence the Government would present in a hearing to contradict the letter. She advised him that she believed the Court would take a dim view of his letter if it saw contradictory evidence at a sentencing hearing and that the Court might then consider sentencing Staszak to more than 25 years. Staszak agreed to revise his letter to remove references to the victim. The Government never told Day, and she never told Staszak, that if he did not withdraw the memorandum and letter, the Government would arrest and prosecute Staszak's parents.

On February 5, 2014, the Court sentenced Staszak to 20 years in prison, below what the parties has jointly requested. The following day, Staszak called Day to thank her and tell her she did a good job. Day sent Staszak's judgment to him and advised him of his appeal rights even though he had

waived some or all of them in his plea agreement.   Staszak continued periodic correspondence with

Day for about the next six months but never mentioned any threats from Day or the Government

playing a role in his decision to plead guilty.   Further, after he was sentenced, Staszak mentioned to

Day wanting to cooperate with the Government for a potential Rule 35 sentence reduction.   The

Government was not interested, but indicated to Staszak he was free to tell them anything he knew.

Additionally, throughout the process, Day properly declined to share discovery with Daniel

Staszak and never told Staszak's parents that they would be prosecuted if Staszak withdrew his guilty

plea.

## V.     Analysis

Staszak's claims to relief in this case are foreclosed by his sworn statements during his plea

colloquy and the facts set forth above.   As the Court has noted before, "the representations of the

defendant . . . at [a plea hearing], as well as any findings made by the judge accepting the plea,

constitute a formidable barrier in any subsequent collateral proceedings.   Solemn declarations in open

court carry a strong presumption of verity."   *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see*

*Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000).

> When a district court conducts a Rule 11 colloquy, it is not putting on a show for the
> defendant, the public, or anybody else.   The purpose of a Rule 11 colloquy is to expose
> coercion or mistake, and the district judge must be able to rely on the defendant's sworn
> testimony at that hearing.   Because the court takes a criminal defendant's rights at a
> change-of-plea hearing very seriously, it is reasonable to expect, and demand, that the
> criminal defendant do so as well.   For that reason, a defendant is normally bound by
> the representations he makes to a court during the colloquy.   Justice would be ill-
> served, and the utility of the Rule 11 colloquy would be undermined, by allowing [the
> petitioner] to renege on his representation under oath to the district court that there were
> no promises made to him to induce his guilty plea.   Absent a showing that his attorney
> personally directed him to hide the truth from the judge, we simply cannot accept [the
> petitioner's] explanation for lying to the court.

*Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010) (internal quotations and citations

omitted).   The petitioner bears a heavy burden of overcoming the presumption that his sworn plea

colloquy statements were true.   *See United States v. Hardimon*, 700 F.3d 940, 944 (7th Cir. 2012).

Staszak's efforts to convince the Court to disregard his sworn statements during the plea

colloquy are unavailing.   Although he claims that Day told him or suggested to him before his plea

that he should lie to keep the plea "on track," the credible evidence clearly shows otherwise—that Day

told him to tell the truth and to ask the Court questions if he did not understand something rather than

risk saying something that was not true.   Furthermore, Staszak displayed no behavior at the plea

colloquy that would support any finding that he was lying at the time, and the Court accordingly found

his sworn statements at that time to be knowingly, voluntarily, and competently made.   Staszak has

simply provided no legitimate reason for the Court to disregard his sworn statements at his plea

colloquy.   Thus, he is bound by those statements in this § 2255 proceeding.

Combined with the facts revealed at the § 2255 hearing, Staszak's sworn statements undermine

his claim to § 2255 relief for a number of reasons.   The first of those reasons is that he has waived his

right to file a § 2255 motion.

A.      Waiver of Right to File § 2255 Motion

The Government argues that in his plea agreement, Staszak waived his right to file this § 2255

motion.   It points to his sworn statement during the plea colloquy showing his plea was voluntary and

in compliance with Federal Rule of Criminal Procedure 11 as well as Day's competent assistance in

negotiating the plea agreement.   Staszak claims the Government improperly threatened to arrest and

prosecute his parents, threatened to have him prosecuted in other jurisdictions, and threatened to bring

more charges against him unless he pled guilty.   He also claims his counsel failed to provide effective

assistance of counsel in connection with negotiating the plea agreement in violation of his Sixth

Amendment rights.

As noted above, a defendant may waive his right to file a § 2255 motion as part of his plea agreement. *Jones v. United States*, 167 F.3d 1142, 1144-45 (7th Cir. 1999). The Court will uphold and enforce such a waiver unless the plea agreement was involuntary, the sentence exceeded the statutory maximum sentence, or the defendant received ineffective assistance of counsel in connection with negotiating the plea agreement. *Id.*; *see Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011). Because Staszak's sentence did not exceed the statutory maximum, the Court need only address the voluntariness of his plea and whether he received ineffective assistance of counsel in the plea negotiations.

1. Voluntariness of Plea

Staszak's plea agreement was not involuntary. The Court conducted a thorough Rule 11 colloquy with Staszak to ensure his plea was voluntary. He insisted it was, stating under oath that his decision to plead guilty was based on the promises made to him in the plea agreement—including the Government's promise to recommend a 25-year sentence when it could have recommended a 100-year sentence—that no other threats or promises had been made to him to induce him to plead guilty, and that he was pleading guilty as his own free and voluntary act. His behavior at the plea hearing reinforced the voluntariness of his guilty plea. Despite his current protestations otherwise, he did not say or do anything—for example, sending signals of duress to the Court—at the hearing that would have caused the Court to question the voluntariness of his plea. On the contrary, the Court made an express finding that his plea was voluntary.

To the extent Staszak points to pre-plea statements from the Government that it would arrest and prosecute his parents if he did not plead guilty, no credible evidence supports that any such

statements were made.   To the extent Staszak points to the Government's pre-plea statements that it would stop investigating his parents after his guilty plea, no credible evidence shows that this was anything Staszak considered in deciding to enter a guilty plea.   Indeed, he did not view any such statements as a threat or promise as he confirmed to the Court at the plea colloquy that no threats or promises had been made outside the plea agreement to induce him to plead guilty.   The credible evidence shows that when he decided to plead guilty, he did so because he was concerned solely with getting the shortest sentence possible for himself, with avoiding the stress of putting his parents through his own trial, and with the disposition of his Jeep.

Even if the Government had made an explicit promise to Staszak to stop investigating his parents as a basis for the plea bargain, in the circumstances at the time, any such promise did not render his plea involuntary.   A guilty plea is not inherently coercive because it is tied to a Government promise to be lenient to a family member.   *Politte v. United States*, 852 F.2d 924, 929 (7th Cir. 1988). The key factor is whether the prosecution of the defendant and of the family member was made in good faith, that is, whether the Government had a legitimate basis for prosecuting the defendant and for doing what it promised in the plea agreement it would refrain from doing to a third party.   *See United States v. Spilmon*, 454 F.3d 657, 658-59 (7th Cir. 2006).   "But it is not duress to offer someone a benefit you have every right to refuse to confer, in exchange for suitable consideration."   *Id.* at 659. In *Politte*, the Court of Appeals noted that the effect of discouraging a defendant from exercising his trial rights by promising to recommend a lenient sentence for his wife is an inevitable and permissible consequence of plea negotiation.   *Politte*, 852 F.2d at 930 (citing *Bordenkircher v. Hayes,* 434 U.S. 357, 364 (1978)).   Here, the Government had a good faith basis for investigating Staszak's parents, including letters and other circumstances suggesting they might have been involved in aiding and

abetting his flight from justice.   It certainly had a good faith basis for looking further into the situation and Staszak's parents' role, if any, in his fleeing from justice.

It is true that the parties should inform the Court of any such "package deal" involving third parties so the Court can ensure a defendant's plea is voluntary.   *Spilmon*, 454 F.3d at 659.   However, in this case the Court heard detailed credible testimony surrounding Staszak's decision to plead guilty, observed his sworn statements and behavior at the plea colloquy, and has found that any Government statement about stopping investigations of his parents was not material to his decision and not improperly coercive.   Even if the Court had known of a Government representation that it would stop investigating Staszak's family after he pled guilty, based on what the Court has learned in this proceeding, it would not have had a reasonable chance of convincing the Court that Staszak's plea was not voluntary.

To the extent Staszak alleges his plea was involuntary because the Government planned to bring more charges against him if he did not agree by July 31, 2013, to plead guilty, that is routine, acceptable plea negotiation.   As long as there is a reasonable basis to believe a grand jury would, in fact, indict Staszak on additional charges—and there is no reason here to believe the Government did not have such a good faith belief—the Government may inform the defendant that it will refrain from presenting those potential charges to the grand jury if the defendant agrees to plead guilty.

Finally, to the extent Staszak alleges his plea was involuntary because the Government informed him charges could be brought against him in other jurisdictions, again that is routine part of plea negotiations.   There was a reasonable basis to believe other jurisdictions could charge Staszak with crimes because his conduct in this case occurred in multiple jurisdictions.   Simply informing Staszak of that possibility is not unduly coercive.

## 2. Ineffective Assistance of Counsel in Plea Negotiations

Staszak received constitutionally adequate assistance of counsel in connection with his plea negotiations and the resulting plea agreement. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to assistance of counsel encompasses the right to *effective* assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). A party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009).

In a case where a petitioner pled guilty as a result of alleged ineffective assistance of counsel, to satisfy the first prong of the *Strickland* test, the petitioner must show that his counsel's advice leading to the plea was outside the range of professionally competent assistance. *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). To satisfy the second *Strickland* prong, he must show that there is a reasonable probability that, but for his counsel's deficient performance, he would not have entered a guilty plea and instead would have gone to trial. *Hill*, 474 U.S. at 58; *United States v. Parker*, 609 F.3d 891, 894 (7th Cir. 2010); *Wyatt*, 574 F.3d at 458; *Richardson v. United States*, 379 F.3d 485, 487 (7th Cir. 2004). Counsel's deficient performance must have been a decisive factor in the defendant's decision to enter a guilty plea. *Wyatt*, 574 F.3d at 458; *see Julian v. Bartley*, 495 F.3d 487, 498 (7th

Cir. 2007). To make such a showing, the petitioner must present objective evidence that he would not have entered a guilty plea; his own self-serving testimony that he would have insisted on going to trial is not enough. *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011); *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996) (citing *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991)); *see Wyatt*, 574 F.3d at 458 (stating "a defendant's mere allegation that he would have chosen a path other than the conditional plea is insufficient by itself to establish prejudice.").

Staszak has failed to show Day or her FPD colleagues[2] performed outside the range of professionally competent assistance. His fanciful statements about Day's performance are simply incredible; they are not convincing in light of credible testimony otherwise and Staszak's multiple statements that he was satisfied with her representation. The credible evidence shows Day did everything competent counsel would to, including reviewing with Staszak the available evidence, possible defenses, trial strategy, possible outcomes depending on whether he chose to go to trial or plead guilty, and the Government's positions (even when those positions were unpalatable to Staszak). She set about preparing for trial—as she has in scores, if not hundreds, of other cases she has had before this Court—and did not pause until Staszak indicated he would rather plead guilty. She further sought favorable but realistic plea terms for Staszak and advised him of her informed judgment about strategy to obtain the lowest sentence possible. She educated Staszak about the plea process, including his waivers of the rights to appeal and collaterally attack his sentence in a § 2255 motion, as he confirmed at that hearing. She did not ask the Court to allow Staszak to withdraw his plea because he did not ask her to. Instead, when she became aware that Staszak was considering a withdrawal, she

---

[2] The Court's future references to Day should be read to include the assistance provided to her by her FPD colleagues in representing Staszak.

competently advised him about the odds of success in such an endeavor and the consequences that would flow thereafter.   He decided not to ask to withdraw his plea.

To the extent Staszak faults Day for not objecting to the Government's "threats," as noted above, the Government was well within its rights to make the statements it did.   Furthermore, to the extent Day failed to bring any third-party agreement to the Court's attention, that failure did not prejudice Staszak because, as noted above, it would not have had a reasonable probability of changing the Court's finding that Staszak's plea was voluntary.

Staszak has further failed to present any objective evidence that he would not have entered a guilty plea had Day performed differently.   His own self-serving testimony in this proceeding—which the Court has already found not credible—is not enough.

In sum, because Staszak has not shown his plea was involuntary or that Day provided constitutionally ineffective assistance of counsel in connection with the plea, his waiver of his right to file this § 2255 petition is enforceable.   He has, in fact, waived his right to file this motion.

B.      Grounds for § 2255 Relief

Even if Staszak had not waived the right to file this motion, the Court would reject the motion first because his guilty plea waived all non-jurisdictional defects prior to his plea, *see Koons v. United States*, 639 F.3d 348, 350-51 (7th Cir. 2011), and second, based on the record of the proceedings and the factual findings made above.

Ground 1:   Ineffective Assistance of Counsel

In Ground 1, Staszak claims his counsel was constitutionally ineffective in violation of his Sixth Amendment right to counsel when she relayed to him a "threat" by the Government in June and July 2013 that if he did not plead guilty to all counts for a 25-year negotiated sentence, the

Government would prosecute his family for aiding and abetting him while he was a fugitive. The Court has already found that the Government made no threats to prosecute his family if he did not plead guilty and that any statements the Government made that it would stop investigating his family after he plead guilty were legitimate and proper because such investigations were based on a good faith investigation of potential criminal wrongdoing. Day was not deficient for failing to relay the Government's statements to Staszak and, in fact, would have been remiss in her duties as counsel had she not done so. *See Missouri v. Frye*, 132 S. Ct. 1399 (2012) (counsel is deficient by failing to convey plea offer to defendant); *Strickland v. Washington*, 466 U.S. 668, 688 (1984) (counsel is deficient by failing to keep the defendant informed of important developments in the case). Day's performance was not deficient.

Ground 2: Threats to Prosecute Family

In Ground 2, Staszak claims his Fifth Amendment rights were violated when the Government induced him to plead guilty by threatening to prosecute his family if he did not. The Court has already found above that the Government made no such threat. On the contrary, it simply informed him it would stop the investigation of his family, an investigation that was conducted in good faith based on evidence suggesting his parents aided him in becoming and/or remaining a fugitive from justice. The Court has further already explained that any statements or promises by the Government in this regard were not material to Staszak's decision to plead guilty.

Ground 3: Ineffective Assistance of Counsel

In Ground 3, Staszak claims his counsel was constitutionally ineffective in violation of his Sixth Amendment right to counsel when she failed to investigate Count 1, which would have revealed the Government did not actually possess certain evidence of the charged offense—a video of sexually

explicit conduct with a minor and evidence linking his cell phone to any sexually explicit conduct—and recommended he plead guilty to Count 1 without conducting a proper investigation.

The evidence establishes the Day adequately investigated Count 1, a charge for which the continuing existence of a video—or even the actual production of a video—was not necessary so long as the defendant acted with the purpose of creating a video. Because there was supporting evidence of this charge, including Staszak's own statements that he had created and then destroyed such a video, it was well within the realm of competent counsel to recommend pleading guilty to the charge. Counsel has a duty to advise her client "of the probable outcome of a trial and offering a learned recommendation based upon [her] experience with and knowledge of the law," *United States v. Messino*, 55 F.3d 1241, 1251-52 (7th Cir. 1995), including whether she believes a plea is in the defendant's best interests. "Urging a client who is facing an overwhelming amount of evidence of guilt against him to consider entering into a plea agreement" is not by itself coercive or ineffective assistance of counsel. *Id.* at 1252. Staszak's argument is further undermined by his truthful and voluntary admission at the plea colloquy of the factual basis for Count 1 and that he did, in fact, commit the conduct supporting that charge.

### Ground 4:   Charging Without Evidence

In Ground 4, Staszak claims his Fifth Amendment rights were violated when the Government charged him in Count 1 with sexual exploitation of a minor without actually possessing a video of sexually explicit conduct with a minor or evidence linking his cell phone to any sexually explicit conduct and, in turn, to interstate commerce. As noted above, the existence of a video is not required to prove the charge in Count 1, and the Government had sufficient evidence without an actual video to have a good faith basis for prosecuting Staszak on Count 1. It is using a child with the intent of

creating a video on a cell phone connected with interstate commerce, even if the video was never created or no longer exists, that satisfies the requirements of Count 1. Additionally, Staszak's argument is undermined by his truthful and voluntary admission at the plea colloquy of the factual basis for Count 1 and that he did, in fact, commit the conduct supporting that charge.

Further, Day was not deficient for failing to object to the fact that the Government did not possess the video that was the subject of Count 1 where the actual possession of the video was not required to prove the charge. Defense counsel is not deficient for failing to make a frivolous or losing argument. *Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013); *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005); *Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001).

Ground 5:   Ineffective Assistance of Counsel

In Ground 5, Staszak claims his counsel was constitutionally ineffective in violation of his Sixth Amendment right to counsel when she advised him to plead guilty to Count 1 after he had informed him that the conduct alleged in Count 1 had never occurred. The credible evidence, however, does not show Staszak informed Day that the conduct alleged in Count 1 did not occur or that Day ever advised him to plead guilty to a crime he did not commit. On the contrary, there was enough evidence to support Count 1 that reasonably competent counsel could have reached the reasonable judgment that acquittal was highly unlikely and that pleading guilty to Count 1 was advisable. Based on the strong evidence against Staszak, including his own statements that he had created and subsequently destroyed a sexually explicit video with a minor on his cell phone, it was not ineffective assistance of counsel for Day to recommend pleading guilty to avoid a recommendation from the Government for a 100-year sentence, yet at the same time to prepare for trial should Staszak not change his plea. Day's performance was not deficient in this regard. Additionally, Staszak's

28

argument is undermined by his truthful and voluntary admission at the plea colloquy of the factual basis for Count 1 and that he did, in fact, commit the conduct supporting that charge.

### Ground 6:   Ineffective Assistance of Counsel

In Ground 6, Staszak claims his counsel was constitutionally ineffective in violation of his Sixth Amendment right to counsel when she advised him to plead guilty to Count 2 after he had informed him that the conduct alleged in Count 2 had never occurred.   For the same reasons the Court rejects Ground 5, it also rejects Ground 6.

### Ground 7:   Ineffective Assistance of Counsel

In Ground 7, Staszak claims his counsel was constitutionally ineffective in violation of his Sixth Amendment right to counsel when she failed to do research to discover that the conduct alleged in Count 3 does not amount to a federal offense.   His argument stems from his belief that he committed sexual conduct with the victim when she was 16 rather than 15, which he believes is not prohibited by federal law.   Day researched this issue and advised Staszak that federal law is interpreted to criminalize conduct with victims under 18 years of age where the victim is at least four years younger than the perpetrator, as was the case with Staszak and his victim.     In any case, the evidence shows Staszak began his interstate travel from North Carolina to Illinois, the relevant criminal act, *United States v. Vang*, 128 F.3d 1065, 1069 (7th Cir. 1997) (noting that the statute punishes the act of traveling, not the illicit sexual conduct), at least the day before the victim's sixteenth birthday, when she was still 15 years old.   Therefore, even if Day had researched the argument and presented it to the Court, there is no reasonable probability that the Court would have accepted it.   Additionally, Staszak's argument is undermined by his truthful and voluntary admission at the plea colloquy—and at the § 2255 hearing—that he was guilty of Count 3 and that he did, in fact,

commit the conduct supporting that charge.

### Ground 8:   Ineffective Assistance of Counsel

In Ground 8, Staszak claims his counsel was constitutionally ineffective in violation of his Sixth Amendment right to counsel when she failed to pursue the Government's offer for Staszak to cooperate in the prosecution of his minor victim's mother.   The evidence shows that during plea negotiations Day made inquiries about the possibility of a potential sentence reduction in exchange for cooperation but that the Government was not interested in a deal involving consideration for a reduction because, in its opinion, Staszak held very little value as a witness.   Indeed, the possibility of a Rule 35 reduction in exchange for the defendant's continued cooperation, a standard term in many plea agreements, was not included in Staszak's.   Staszak has not specified what else Day could have done to secure the Government's agreement to consider him for a Rule 35 sentence reduction, and when a § 2255 petitioner faults his attorney's performance, he bears the burden of demonstrating what counsel should have done that had a reasonable probability of reaching a different outcome.   *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005); *Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003); *see, e.g., United States v. Stuart*, 773 F.3d 849, 852-53 (7th Cir. 2014).   In the absence of any suggestion about what Day could have done to change the Government's mind about considering a sentence reduction in exchange for Staszak's cooperation, his argument cannot succeed.

Staszak further claims his Fifth Amendment rights were violated when the Government falsely represented to him that he would receive a sentence reduction if he cooperated with an ongoing investigation of the victim's mother.   The evidence shows that, although the Government may have appeared interested in his cooperation at the beginning of the case, it lost interest after he absconded. After that, the Government made no representation that a Rule 35 reduction was in the offing and

instead, invited Staszak's voluntary cooperation without the promise of anything in return. There was nothing improper about the Government's assessment of Staszak's value as a witness or willingness to consider a sentence reduction. Staszak never reached out to the Government to provide any information about the victim's mother.

To the extent Staszak faults the Government for representing to the Court at his sentencing hearing that there was an ongoing investigation of the victim's mother, Staszak has not pointed to any evidence suggesting that representation to have been false. Just because no charges were brought does not in any way imply there was no investigation.

### Ground 9:   Ineffective Assistance of Counsel

In Ground 9, Staszak claims his counsel was constitutionally ineffective in violation of his Sixth Amendment right to counsel when she induced him to plead guilty using threats of prosecution of his family or prosecution of him by other jurisdictions, and false promises of a sentence reduction for cooperation. The evidence shows that none of the inducements alleged by Day actually occurred. She did not threaten him with prosecution of his family; she truthfully relayed to him that the Government would stop investigating his family if he pled guilty. She did not threaten him with prosecution in other jurisdictions; she truthfully advised him that prosecution in other jurisdictions was possible. She did not promise him a sentence reduction in exchange for cooperation; she truthfully informed him the Government would not consider moving for a Rule 35 sentence reduction. What Day did was review the evidence that would be used against Staszak, explain to him the probable outcome of a trial and its consequences, explain the probable consequences if he pled guilty, advise him that in her judgment he would receive a shorter sentence if he pled guilty, and so recommended he plead guilty. All the time, she was preparing for trial based on his original decision to go to trial. As

noted above, it is not ineffective assistance of counsel to advise a client that, in counsel's judgment based on her experience and knowledge of the law, it was in his best interests to plead guilty. *United States v. Messino*, 55 F.3d 1241, 1251-52 (7th Cir. 1995). This assessment was reasonable in light of the strong evidence against Staszak and the reduced sentence the Government would recommend if Staszak pled guilty compared to a potential 100-year sentence recommendation if he went to trial and was convicted.

<u>Ground 10: Exculpatory evidence</u>

In Ground 10, Staszak claims his Fifth Amendment rights were violated when the Government failed to produce exculpatory evidence—a forensic examination of his cell phone showing no images of sexual activity. As a preliminary matter, Staszak has not produced any evidence that such a report exists. Without evidence that such a report exists, Staszak cannot prove the Government wrongfully failed to produce it.

Furthermore, any such report, if it existed, would not have been material exculpatory evidence that needed to be disclosed. Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), *Giglio v. United States*, 405 U.S. 150, 155 (1972), and their progeny, the prosecution has the duty to ensure that criminal trials are fair by disclosing material evidence that is exculpatory. There is no doubt that a defendant is entitled to disclosure of all evidence that "would tend to exculpate" him. *Brady*, 373 U.S. at 88. However, *Brady*, *Giglio* and their progeny do not require disclosure of "every possible shred of evidence that could conceivably benefit the defendant." *United States v. Hamilton*, 107 F.3d 499, 509 (7th Cir. 1997). The evidence need only be disclosed if there is a reasonable probability that the result of the proceeding would have been different. *United States v. Stott*, 245 F.3d 890, 901 (7th Cir. 2001). In Staszak's case, where the Government never contended it had actually located a sexually

explicit video on Staszak's phone, whether the video was on his phone is immaterial. The Government was relying on evidence, including Staszak's own statements, that he took the video and then destroyed it. Evidence that the video was not on his phone would simply be immaterial in light of the Government's theory of the case.

Finally, Staszak did not go to trial, and the Government had no obligation to disclose any forensic report before he voluntarily pled guilty. *Brady* and *Giglio* evidence must be disclosed "in time for the defendant to make use of it" and not "so late as to prevent the defendant from receiving a fair trial." *United States v. Grintjes*, 237 F.3d 876, 880 (7th Cir. 2001) (internal quotations omitted). As long as the Government were to disclose the report, assuming it existed, in time for Staszak to make use of it at trial or some other evidentiary hearing, due process would be satisfied. There was no trial or other evidentiary hearing, so no *Brady* violation infected this case.

<u>Ground 11:   Ineffective Assistance of Counsel</u>

In Ground 11, Staszak claims his counsel was constitutionally ineffective in violation of his Sixth Amendment right to counsel when she failed to file a motion to withdraw his guilty plea after he and/or his parents instructed her to do so on two occasions. The credible evidence shows Staszak never requested withdrawal of his guilty plea, so Day was not deficient for failing to file a motion to that effect. Instead, when she learned Staszak was considering trying to withdraw his guilty plea, she advised him about the likelihood of success and the consequences should he file such a motion. He never raised the issue again, and thereafter stated multiple times he was satisfied with her representation. Day performed as competent counsel in this regard.

To the extent Staszak's parents may have asked Day to file a motion to withdraw Staszak's guilty plea, they had no authority to make such a request because they were not Day's clients. Day

33

responded appropriately to inquiries received from her client regarding potential withdrawal and had no obligation to follow any requests or instructions from anyone else.

<u>Ground 13:   Ineffective Assistance of Counsel</u>

In Ground 13, Staszak claims his counsel was constitutionally ineffective in violation of his Sixth Amendment right to counsel when she failed to investigate Count 2, which would have revealed that the dominant purpose of his interstate travel was not to have illicit sexual conduct with the victim, and when she failed to challenge the Court's jurisdiction on this basis.   The evidence shows Day did investigate this issue and determined that multiple purposes for his travel in interstate commerce would not be a defense to Count 2 so long as the jury found that *a dominant* purpose, not necessarily *the dominant or primary* purpose, was to have illicit sexual conduct with a minor.   *See United States v. Vang*, 128 F.3d 1065, 1067-72 (7th Cir. 1997).   She was not deficient in this regard.   This claim is further undermined by Staszak's truthful and voluntary admission at the plea colloquy that he traveled for the purpose of having illicit sexual conduct with a minor as alleged in Count 2.

<u>Ground 14:   Ineffective Assistance of Counsel</u>

In Ground 14, Staszak claims his counsel was constitutionally ineffective in violation of his Sixth Amendment right to counsel when she failed to investigate individuals he claims were involved in criminal conduct with the victim—the victim's mother and other men Staszak believes had committed illegal sexual conduct with the victim—and falsely promised him he would receive sentence reduction of at least 50% for assisting with prosecution of the other individuals.

An attorney has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."   *Strickland v. Washington*, 466 U.S. 668, 691 (1984); *accord Wiggins v. Smith*, 539 U.S. 510, 521 (2003)*; Warren v. Baenen*, 712 F.3d 1090, 1097 (7th Cir.

2013); *Adams v. Bertrand*, 453 F.3d 428, 436 (7th Cir. 2006).   An attorney does not have to investigate every conceivable line of mitigating evidence as long as her decision not to investigate a particular line was reasonable from her perspective at the time she made the decision to forego the investigation.   *Wiggins*, 539 U.S. at 521-22; *Adams*, 453 F.3d at 436; *Brown v. Sternes*, 304 F.3d 677, 692 (7th Cir. 2002).   Strategic choices to limit an investigation are reasonable if "reasonable professional judgments support the limitations on investigation."   *Strickland*, 466 U.S. at 690-91; *accord Wiggins*, 539 U.S. at 521.

Additionally, when a petitioner accuses his counsel of failing to investigate his case, in order to establish prejudice he must point to "sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced."   *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003) (internal quotations and citation omitted); *accord Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004).   He cannot rely on vague allegations that the investigation was insufficient or would have yielded favorable evidence.   *See Hardamon*, 319 F.3d at 951.

Counsel was not deficient for failing to investigate other individuals Staszak claimed also committed crimes involving the victim.   The evidence shows Day looked into the issue and determined that, based on protections afforded minor victims of sexual crimes, it would be virtually impossible to get evidence of her prior sexual conduct admitted.   Day made the completely reasonable decision not to waste defense resources pursuing a likely useless avenue of investigation. Additionally, as Staszak's counsel, her concern was for his conduct, not the illegal conduct of others. Furthermore, Staszak has not explained what Day would have found had she conduct further investigation or how he suffered prejudice from her failure to do so.   Additionally, as noted above, the evidence shows that at no time did Day promise Staszak a sentence reduction in exchange for assisting

in the prosecution of those individuals.

Overall Performance

In summary, the Court notes the overall admirable performance rendered by Day and her colleagues in the approximately 220 hours they spent on Staszak's case. They handled an emotionally fraught situation involving an otherwise upstanding defendant competently and professionally throughout the case. Day was able to obtain an outstanding result for Staszak in light of the charges and the evidence against him. When she assumed his representation, the Government had announced it was prepared to pursue additional charges against Staszak, would recommend for the existing charges an effective life sentence if Staszak was convicted by a jury, but had offered a recommendation for 30 years and no additional charges if Staszak pled guilty. Day formed the reasonable professional opinion that the evidence against Staszak was strong and that he would likely be convicted on all counts if he went to trial. Nevertheless, she prepared for trial on Staszak's instruction, as she has numerous times for countless defendants over her career as a public defender and readily does when her client demands it. She ended up obtaining an offer from the Government to recommend a 25-year sentence and presenting a case that convinced the Court to enter an even lower sentence—20 years. In light of the strong evidence against Staszak that exposed him to 100 years in prison—including overhears of his own conversations, transcripts of sexually graphic Facebook chats with the victim, and statements he made to law enforcement before his arrest—this was an outstanding result that well exceeded mere competent representation. There is no basis for awarding § 2255 relief in this case.

Similarly, nothing in Staszak's criminal or § 2255 proceedings reveals any misconduct or questionable behavior by Government counsel. They likewise rendered an admirable performance

36

representing the United States.[3]

For the foregoing reasons, the Court will deny Staszak's § 2255 motion.

## VI. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings and Rule 22(b)(1) of the Federal Rules of Appellate Procedure, the Court considers whether to issue a certificate of appealability of this final order adverse to the petitioner.   A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2); *see Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1045 (7th Cir. 2001).   To make such a showing, the petitioner must "demonstrate that reasonable jurists could debate whether [the] challenge in [the] habeas petition should have been resolved in a different manner or that the issue presented was adequate to deserve encouragement to proceed further."   *Ouska*, 246 F.3d at 1046; *accord Buck v. Davis*, 137 S. Ct. 759, 773 (2017); *Miller-El v. Cockrell*, 537 U. S. 322, 327 (2003).   The Court finds that Staszak has not made such a showing and, accordingly, declines to issue a certificate of appealability.

## VII. Conclusion

For the foregoing reasons, the Court **DENIES** Staszak's § 2255 motion and its supplements (Docs. 1, 6, & 31) and **DIRECTS** the Clerk of Court to enter judgment accordingly.   The Court further **DECLINES** to issue a certificate of appealability.

**IT IS SO ORDERED.**
**DATED:   February 21, 2020**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

---

[3] Terry Green, Staszak's counsel in his § 2255 proceeding, performed in an outstanding manner as well, although since his conduct is not in issue in this case, the Court sees no need to expound further.